UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAMON THIBODEAUX | * | CIVIL ACTION NO. 13-5903 |
| | * | |
| | * | SECTION: "A"(1) |
| VERSUS | * | |
| | * | JUDGE JAY C. ZAINEY |
| NEWELL NORMAND, ET AL. | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER AND REASONS

Before the Court is the MOTION to Compel Jefferson Parish District Attorney's Response to Subpoena by Damon Thibodeaux (Rec. Doc. 60). For the following reasons, the Motion is GRANTED in part and DENIED in part.

Background

After hours of interrogation beginning the evening of July 20, 1996, at 4:21 a.m. on July 21, 1996, Thibodeaux confessed to the murder of Crystal Champagne, his 14 year old cousin. (Pl.'s Mem. Supp., at 1, Rec. Doc. 60-1). He was indicted by a grand jury on July 25, 1996. (Order & Reasons Summ. J., at 8, Rec. Doc. 31). On October 3, 1997, a jury found him guilty of first degree murder and he was sentenced to death. Id. at 1, 8. Other than two witnesses that testified that they saw Thibodeaux in the vicinity where Champagne's body was found on the night of the murder, it appears the only evidence against Thibodeaux was this confession. Id. at 3. At trial, the state court denied Thibodeaux's motion to suppress the confession. Id. at 5. The trial court also reviewed the grand jury transcript and found there was no evidence of a Brady violation. (Defs.' Mem. Opp., at 10, Rec. Doc. 68). The Louisiana Supreme Court affirmed Thibodeaux's conviction and sentence. Id. at 4. Sometime later, the Innocence Project took up Thibodeaux's case and together with the Jefferson Parish District Attorney ("JPDA") began investigating the

1

evidence against Thibodeaux. (Pl.'s Mem. Supp., at 1, Rec. Doc. 60-1). In 2012, Thibodeaux and the JPDA moved jointly to vacate Thibodeaux's conviction, the district court granted the motion, and Thibodeaux was released from prison. (Def.'s Mem. Opp., at 4, Rec. Doc. 68). It appears that District Attorney Paul Connick with the JPDA was persuaded that Thibodeaux's confession was false and that the conviction could not stand without it. (Order & Reasons Summ. J., at 2 n. 3, Rec. Doc. 31).

Thibodeaux then filed this action pursuant to 42 U.S.C. §§ 1983, 1985, 1988 and state law against Jefferson Parish Sheriff Newell Normand in his official capacity and various investigators with Jefferson Parish Sheriff's Office ("JPSO") in their individual capacities (collectively the "Defendants"). (Complaint, Rec. Doc. 1). Thibodeaux alleges that he was wrongfully seized without probable cause, that the interrogation was unconstitutional and produced a false confession, and that Defendants conspired to violate his constitutional rights. Id. at 19-26. He also alleged that Defendants are liable for malicious prosecution, intentional infliction of emotional distress, defamation and negligence under Louisiana law. Id. at 26-33. In considering the Defendants' Motion for Summary Judgment, the District Judge explained that "[t]he crux of Thibodeaux's claims against the individual defendants is that but for their wrongful conduct in interrogating him, he would not have falsely confessed to Crystal Champagne's murder, and consequently, he would not have spent 16 years in prison for capital murder." (Order & Reasons Summ. J., at 2 n. 3, Rec. Doc. 31).

On March 3, 2015, the District Judge granted JPSO's Motion for Summary Judgment in part, ruling that Thibodeaux's claims for violation of the Fourth and Fourteenth Amendment (his alleged unlawful seizure without probable cause on July 20, 1996) were prescribed. Id. at 16.

2

Applying Wallace v. Kato,[1] the District Court held that the limitations period on Thibodeaux's claim for unlawful seizure began to run when Thibodeaux was indicted because at that time, he was held pursuant to legal process. Id.  Thus, the District Court held that the one year prescriptive period on this claim expired prior to Thibodeaux's conviction, preventing the application of the Heck v. Humphrey[2] principal of delayed accrual of a §1983 claim during the existence of a criminal judgement. Id.  In a footnote, the District Court observed that for purposes of its prescription analysis, "it would be significant if Thibodeaux had evidence that Defendants lied before the grand jury." Id. at 15. Although the District Court concluded that there was no evidence of such misconduct, id., it appears that its prescription analysis might change if such evidence was obtained. Indeed, in later denying Thibodeaux's motion for reconsideration of the summary judgment ruling, the District Court considered Thibodeaux's argument that discovery was incomplete and he anticipated obtaining evidence that could affect the prescription analysis. (Order & Reasons Mot. Recons., at 1, Rec. Doc. 37).  Citing the same footnote text, the District Court explained that "[i]f Thibodeaux should obtain evidence of the nature that he contends does in fact exist, then he can bring it to the Court's attention via an appropriate motion." Id.  at 2.

In considering Thibodeaux's "Count II" claim that his confession was unconstitutionally obtained and knowingly used at trial against him, the District Court granted summary judgment for the Defendants, dismissing all claims except for Thibodeaux's Fifth/Sixth Amendment claim for violation of his right to counsel and right against self-incrimination (related to Thibodeaux's

---

[1] The Supreme Court in Wallace held that "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." 549 U.S. 384, 397 (2007).

[2] In Heck the Supreme Court ruled that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." 512 U.S. 477, 489–90, (1994).

allegation that after waiving his right to counsel during the interrogation, he reasserted his right to counsel but the interrogation continued without counsel). (Order & Reasons Summ. J., at 20, Rec. Doc. 31). This claim was not prescribed because the limitations period did not begin to run until the confession was used against Thibodeaux at trial, and then the Heck principal operated to delay accrual until his conviction was vacated. Id. at 18-19. The other constitutional claims related to the interrogation, however, accrued and expired prior to the conviction. Id. at 20. Moreover, the District Court found the Defendants had no liability related to the use of the confession because there was no suggestion that the Defendants had lied at the hearing on the motion to suppress the confession and Defendants could not be responsible for failing to know the confession was false when neither defense counsel, the district attorney, trial judge or jury came to that conclusion. Id. at 19 n. 16.

  The District Court also granted summary judgment on conspiracy, finding that Thibodeaux could not state a claim. Id. In considering whether to grant summary judgment on the only claim to survive the prescription rulings, the District Court noted that the issue of whether Thibodeaux's confession was true or false was not only too disputed to be resolved on summary judgment, but it was also immaterial to Thibodeaux's federal claims. Id. at 22-23. The Court explained that if Thibodeaux succeeds in proving that his rights were violated during the interrogation, Defendants would not be shielded from liability if they could show that Thibodeaux's confession was true. Id. at 23. Nonetheless, the District Court recognized that the parties had an interest in addressing the issue because a jury would be more sympathetic to Thibodeaux's claim if they believe him to be innocent. Id. at 23-24. The District Court concluded that "from a damages perspective . . . the guilt or innocence inquiry (and hence the falsity *vel non* of the confession) might have some relevance

to this civil case." Id. at 24. However, the Court went on to say that it would not allow the parties "to commandeer this civil case by entirely retrying the criminal case." Id.

The District Court did not address the Plaintiff's state law claims because the Defendants had not included these claims in their motion for summary judgment, and in so doing, the District Court explained that it did not appear to have original jurisdiction over the state law claims and if the federal claims were dismissed, it would dismiss the state law claims if doing so would not be an abuse of discretion. Id. at 4 n. 6.

After the filing of the present motion, the District Court ruled on several motions *in limine* pursuant to which the Defendants sought to exclude experts proposed by Thibodeaux. (Rec. Doc. 79). The District Court underscored that in ruling on summary judgment, it had already determined that the issue of "whether Thibodeaux actually murdered Crystal Champagne . . . will not be tried in this civil case."  Id. at 3. The Court found that by seeking to introduce experts on the guilt or innocence issue, Thibodeaux was "ignoring the Court's admonition that the criminal case will not be retried as part of the civil litigation." Id. at 12.  Thus, the Court excluded Thibodeaux's proposed experts, finding that their opinions were "irrelevant to this case and beyond the scope of the issues being tried." Id. at 12-13.

Discovery Issue

Thibodeaux's discovery has included requests to the JPDA. (Pl.'s Mem. Supp., at 5, Rec. doc. 60-1). In response to two subpoenas for depositions and documents, the JPDA produced over 25,000 pages of bates labeled documents, less the documents contained within that bates range over which the JPDA has asserted a privilege. Id. at 6. The JPDA describes the privileged materials as including documents concerning the JPDA's ongoing investigation of Ms. Champagne's murder, documents regarding the original prosecution of Thibodeaux and post-conviction

proceedings, documents related to the grand jury that indicted Thibodeaux, and communications and documents related to the investigation of Dr. Michael Welner, a forensic psychiatrist that the JPDA asserts it alone retained to assist in reviewing Thibodeaux's case after his conviction. (JPDA's Mem. Opp., at 2-5, Rec. Doc. 70). There are three privilege logs with 74 pages of entries addressing the privileged documents. Id.

In this Motion, Thibodeaux challenges the privileges asserted by JPDA and divides the documents into four categories: 1) attorney-client and work product privilege, 2) attorney-expert communications and work product, 3) ongoing investigation; and 4) grand jury materials. (Pl.'s Mem. Supp., at 6, Rec. doc. 60-1). Both the Defendants and JPDA oppose.

The parties' arguments regarding the first three categories focus on the scope of certain privileges. However, as discussed further below, because the Court finds that the materials requested are outside the scope of discovery entirely, the Court declines to address the privilege arguments.

## Law and Analysis

*1. Standard of Review*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id.

While construing relevance broadly, this Court is anchored by the parties' pleadings. See Fed. R. Civ. Proc. 26 advisory committee's notes to 2000 amendment (explaining that in analyzing relevance, the parties should "focus on the actual claims and defenses involved in the action," but that "a variety of types of information not directly pertinent to the incident in suit could be relevant

to the claims or defenses raised in a given action"); see also XTO Energy, Inc. v. ATD, LLC, No. CIV 14-1021 JB/SCY, 2016 WL 1730171, at *17 (D.N.M. Apr. 1, 2016) (quoting State Farm Mut. Auto. Ins. Co. v. Fayda, No. 14CIV9792WHPJCF, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015), aff'd, No. 14CV9792, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016)) (concluding that following the 2015 amendments to the Rules, "[r]elevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense.'"). Thus, "[t]o implement the rule that discovery must be relevant to the claim or defense of any party, district courts have examined the relationship of the requested discovery and the facts it is intended to uncover to the specific claims and defenses raised by the parties." Thibault v. BellSouth Telecommunications, Inc., No. CIV.A. 07-200, 2008 WL 4808893, at *2 (E.D. La. Oct. 30, 2008) (M.J. Wilkinson). Indeed, the advisory committee's notes to Rule 26 explain that the parties "have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings" and the court "has the authority to confine discovery to the claims and defenses asserted in the pleadings." Fed. R. Civ. P. 26 advisory committee's 2000 Amendment notes.

In addition to being relevant, discovery must be proportional. In determining proportionality, the parties (and the Court if called to weigh in) should consider:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. Proc. 26(b)(1). As the comments to the 2015 amendments explain, the court must "consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." Id. advisory committee's 2015 Amendment notes. Thus, where discovery is

of critical importance, more burden or expense may be tolerated, while if the sought after materials are of little relevance, the Court will be less likely to impose burden and expense.

The bases for objecting to a Rule 45 subpoena include protection of privileged materials and protection from undue burden. See id. Fed. R. Civ. Proc. 45(d)(3); see also Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 817–18 (5th Cir. 2004). Where the subpoenaed person is a non-party, the Rules also require this Court to protect such person "from significant expense resulting from compliance." Fed. R. Civ. Proc. 45(d)(2)(ii). "To determine whether the subpoena presents an undue burden, we consider the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." Wiwa , 392 F.3d at 818. As explained by a district court in Texas, "[w]hen a subpoena is issued as a discovery device, relevance for purposes of the undue burden test is measured according to the standard of [Federal Rule of Civil Procedure] 26(b)(1)." Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC, 313 F.R.D. 39, 44–45 (N.D. Tex. 2015) (alteration in original) (quoting Williams v. City of Dallas, 178 F.R.D. 103, 110 (N.D. Tex. 1998)).

   2. *Documents Relevant to Thibodeaux's Guilt or Innocence*

JPDA objected to producing various materials in its files on the basis of the attorney-client and work product privilege, the attorney-expert communications and work product privilege and the ongoing investigation privilege. These materials all appear to be related to analysis of the murder of Ms. Champagne after the conviction of Thibodeaux. Thibodeaux explains that "much of the discovery withheld by the JPDA . . . concerns its decision to vacate Damon Thibodeaux's conviction and death sentence, and to immediately release him from Death Row, and its active

investigation of one or more third parties by conducting DNA testing, among other things, to determine the identity of Crystal Champagne's real killer." (Mem. Supp., at 13, Rec. Doc. 60-1). In short, Thibodeaux concludes, "this evidence is relevant." Id. Elsewhere, Thibodeaux explains that the materials are "probative of Mr. Thibodeaux's guilt or innocence" Id. at 13. Thibodeaux insists his need for the materials is substantial because JPSO claims Thibodeaux is guilty. Id. at 7. It is clear throughout Thibodeaux's memoranda on this motion to compel that the materials are sought to prove Thibodeaux's innocence. Thibodeaux's counsel confirmed this purpose at oral argument.

When the District Court ruled on Defendants' Motion for Summary Judgment, only one claim was left standing: Thibodeaux's Fifth/Sixth amendment claim for violation of his right to counsel and right against self-incrimination when Defendants allegedly continued interrogating him after he reasserted his right to counsel. (Order & Reasons Summ. J., at 20, Rec. Doc. 31). While the District Court mused that Thibodeaux's guilt or innocence "might have some relevance," it went on to admonish that neither party would be allowed "to commandeer this civil case by entirely retrying the criminal case." Id. at 24. Indeed, in excluding the testimony of several of Thibodeaux's proposed experts that would testify on matters related to Thibodeaux's guilt or innocence, the District Court held that the "tangential relevance of guilt or innocence to the sole remaining constitutional violation at issue" was insufficient to justify "the myriad of forensic and sociological experts that Thibodeaux seeks to introduce at trial." (Order & Reasons Mos. Limine, at 13, Rec. Doc. 79).

Because Thibodeaux's guilt or innocence is of tangential relevance to Thibodeaux's claims, discovery of the voluminous JPDA materials related to the investigation of Ms. Champagne's murder is not justified. Although the parties did not brief the issue on a document

9

by document basis, it appears that none of the materials requested bear on the only material issue of whether Thibodeaux re-invoked his right to counsel during the interrogation. Counsel for Thibodeaux admitted at oral argument that the materials were only sought for the purpose of proving Thibodeaux's guilt or innocence. The District Court has made clear that this issue is not relevant to the issues to be tried in this case. This also means that Thibodeaux's need for the materials for the purposes of this case is minimal. Undersigned also finds that the breadth of the document request is vast. The purportedly privileged documents are listed on a 76 page privilege log and found within a production of over 25,000 pages. Importantly, the JPDA is a non-party to this litigation and has already engaged in extensive work to respond to the subpoena. Non-parties must be protected from undue expense. Further, the requested documents appear to cover a time span of over 15 years. The Court finds the burdensomeness of the request outweighs the relevance of the documents and Thibodeaux's need for them. Accordingly, except as provided below, the Court finds that JPDA is not required to produce the documents sought by Thibodeaux in this Motion to Compel.

   3. *Grand Jury Materials*

Thibodeaux argues that grand jury testimony that led to his indictment is not entitled to protection here because his case would be greatly prejudiced if he did not have the materials. (Pl.'s Mem. Supp., at 15, Rec. Doc. 60-1). He submits that the privilege protecting grand jury proceedings is based in state law, and adds that the privilege must yield to constitutional rights. Id. Thibodeaux alleges that one or more of the Defendants gave false testimony before the grand jury. Id. He argues that his need for the grand jury transcripts is great because no other source can provide the information in them. Id. at 17. He adds that need for secrecy is minimal because the criminal investigation is over, and submits that a protective order can be issued to maintain secrecy.

Id. a 18. He also suggests that the Court could review the transcript *in camera* to determine whether certain false statements were made.

Although the subpoena was not directed to them, the Defendants submitted an opposition memorandum primarily opposing the production of the grand jury transcript. (Def.'s Opp. Mem., Rec. Doc. 68). They argue that Thibodeaux's Fourth and Fourteenth Amendment claim arising out of alleged false or misleading testimony by the Defendants to the grand jury were dismissed by the District Court in granting partial summary judgment. Id. at 10. They submit that the only issue remaining in this case is the voluntariness of Thibodeaux's confession and whether Defendants are entitled to qualified immunity.[3] Id. at 6. They argue that the grand jury transcript could not lead to any relevant evidence regarding these claims. Id. at 7. Defendants further argue that this Court is collaterally estopped from reviewing the grand jury transcript because the trial judge in Thibodeaux's criminal case already reviewed the transcript and found no Brady[4] violations. Id. at 10-11.

The JPDA also opposes production of the grand jury transcript, arguing that the transcript is protected from disclosure under the Louisiana Constitution and Louisiana Code of Criminal Procedure. (JPDA's Mem. Opp., at 14-15 Rec. Doc. 70). The JPDA submits that both Louisiana and federal law require a showing of compelling necessity for the grand jury transcript that outweighs the continuing need for secrecy and that a general claim that the materials will reveal exculpatory evidence or evidence of perjury is usually not sufficient. Id. at 15. The JPDA also adopts the arguments raised by the Defendants, and adds that Thibodeaux does not appear to have

---

[3] Defendants classify the District Judge's order on summary judgment as "final." However, the grant of summary judgment was partial, making the order interlocutory. There is no evidence in the record that the judgment was certified for appeal, indicating that the judgment remains subject to appeal after final judgment. See 28 U.S.C. §1292.

[4] Under Brady and its progeny, the government must disclose to the defense exculpatory evidence within its possession. 6 Crim. Proc. § 24.3(b); see, e.g., Kyles v. Whitley, 514 U.S. 419, 432–33, 115 S. Ct. 1555, 1565, 131 L. Ed. 2d 490 (1995).

alleged that any inconsistent testimony between the grand jury and trial had a prejudicial impact on his confession. Id.

"Federal courts long have recognized that secrecy is essential to maintaining the integrity of the grand jury system." In re Grand Jury Testimony, 832 F.2d 60, 62 (5th Cir. 1987). Grand jury testimony can be released "where a party demonstrates with particularity a 'compelling necessity' for the materials." Id. Thus, where a party seeks disclosure of federal grand jury transcripts, the Supreme Court has required the requesting party to show that "the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." Douglas Oil Co. of California v. Petrol Stops Nw., 441 U.S. 211, 222 (1979). This is similar to the state law rule cited by Thibodeaux, which requires the requesting party to show "specific facts illustrating any great prejudice or injustice he . . . would suffer." Trenticosta v. Mamoulides, 633 So. 2d 786, 788 (La. Ct. App.), writ denied, 94-1295 (La. 9/2/94), 643 So. 2d 147. The need must be real. See In re Grand Jury Testimony, 832 F.2d at 63. For example, the Fifth Circuit has required that a party seeking disclosure of grand jury testimony for purposes of impeachment or to refresh recollection must first depose the witnesses to determine whether disclosure of the testimony is necessary. Id. at 64; In re Corrugated Container, 667 F.2d 4, 4 (5th Cir. 1980); Id.

Thibodeaux contends that the grand jury transcript may reveal a conspiracy to deprive him of civil rights. But as the Defendants point out, Thibodeaux's claims arising out of any alleged false testimony at the grand jury proceeding were dismissed by the District Court as prescribed. Although the District Court did not address claims arising out false testimony to the grand jury explicitly in its holding, the Court clearly dismissed all claims other than Thibodeaux's Fifth/Sixth

amendment claim. The testimony and evidence at the grand jury proceedings are irrelevant to resolving this claim.

However, the District Court seems to have acknowledged the possible relevance of the grand jury testimony to its prescription analysis as to Thibodeaux's Fourth Amendment unlawful seizure claims. In ruling on Thibodeaux's Motion for Reconsideration, the District Court recognized Thibodeaux's argument that he anticipated obtaining the type of evidence that could affect the Court's prescription analysis. (Rec. Doc. 37, at 1). The Court noted that in ruling on summary judgment, it had determined that "it would be significant if Thibodeaux had evidence that Defendants lied before the grand jury." Id. at 2. While not opining on whether such evidence would be sufficient to re-open the prescription issue, the District Court suggested Thibodeaux could bring such evidence before the Court by an appropriate motion. Id. But at the time of the Motion for Reconsideration, Thibodeaux still did not have such evidence to present to the Court.

If evidence of lies to the grand jury exists, it could only be obtained through a review of the grand jury testimony. Accordingly, to the extent such evidence might provide a basis for reconsideration of the prescription analysis on Thibodeaux's Fourth Amendment claim, the grand jury testimony is highly important. Thibodeaux could not determine whether testimony before the grand jury was false without reviewing that testimony. The Court finds deposition of grand jury witnesses would be a poor substitute in this situation. Further, the Court finds that the interest in secrecy of this grand jury transcript has diminished. The grand jury proceedings occurred over twenty years ago. And while the investigation of Ms. Champagne's murder may be ongoing, the trial arising out of the grand jury proceedings has come and gone. Moreover, the Court has reviewed the grand jury transcript and determined that no lay witnesses testified.[5] Accordingly,

---

[5] The Court is not in a position to assess whether or not the grand jury transcript reveals false or misleading testimony and does not do so here.

protecting lay witnesses whose identity might be confidential is not at issue here. Additionally, the Court finds that limited disclosure of the grand jury transcript subject to a protective order that the transcript not be used other than in this litigation offers sufficient protection of the interest in secrecy of grand jury proceedings.

Conclusion

For the foregoing reasons, Thibodeaux's Motion to Compel is GRANTED in part and DENIED in part. Within fourteen days of this Order, the JPDA shall produce the grand jury transcript subject to a protective order that the transcript shall only be used in this matter, shall not be disclosed outside of the trial teams of the parties in this case, and shall not be filed into the record without a request that such transcript be filed under seal along with supporting memoranda in accordance with Local Rule 5.6. As to the remaining documents, they are not sufficiently material to the issues in this case to warrant the burden of production by JPDA, a non-party to this litigation.

New Orleans, Louisiana, this  1st  day of December, 2016.

                                                  Janis van Meerveld
                                        United States Magistrate Judge