UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAMON THIBODEAUX                                        CIVIL ACTION

VERSUS                                                  NO: 13-5903

NEWELL NORMAND, ET AL.                                  SECTION: "A" (1)

## ORDER AND REASONS

The following motion is before the Court: **Second Motion for Reconsideration (Rec. Doc. 103)** filed by the plaintiff, Damon Thibodeaux.[1]

Defendants, Jefferson Parish Sheriff's Office ("JPSO") employees Lt. Steve Buras, Sgt. Dennis Thornton, Lt. Stacy Phillips, Major Walter Gorman, Lt. Maggie Snow, and Lt. Hilda Montecino, in their individual capacities, and Sheriff Newell Normand, in his official capacity as Sheriff of Jefferson Parish, oppose the motion.[2]

The motion, submitted for consideration on July 8, 2020, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is DENIED.

---

[1] Thibodeaux's second motion for reconsideration was filed under seal because it includes references to grand jury testimony subject to a protective order. The Court is not persuaded that this Order and Reasons, which does not divulge any of the contents of the grand jury's evidence, should be filed under seal.

[2] Newell Normand is no longer the Sheriff of Jefferson Parish. Joseph Lopinto, who now holds that office, is enrolled as counsel of record because he represented Defendants before he was elected to succeed Normand. The case remains stayed and administratively closed so no motion has been filed to withdraw Lopinto as counsel and to substitute him in as a defendant in his official capacity. Neither Normand nor Lopinto held the office when the events giving rise to this action occurred.

I.   **Background**[3]

On July 21, 1996, the plaintiff, Damon Thibodeaux, confessed to the murder and rape of fourteen year-old Crystal Champagne. A state court judge determined that the confession was admissible against Thibodeaux at his criminal trial.

A Jefferson Parish jury found Thibodeaux guilty of first degree murder and he was sentenced to death. The Louisiana Supreme Court upheld the conviction and sentence as well as the admissibility of the confession. *State v. Thibodeaux*, 750 So. 2d 916, 920 (La. 1999). Thibodeaux spent the next 16 years on death row awaiting execution until a state court judge granted, without reasons, a joint motion by Thibodeaux and the district attorney to vacate the conviction and sentence. This occurred on September 27, 2012.

On September 20, 2013, Thibodeaux filed this civil action pursuant to 42 U.S.C. §§ 1983, 1985, 1988, and state law to recover money damages, punitive damages, and attorney fees for what he contends was his wrongful conviction for the murder of Crystal Champagne. No one could plausibly suggest that the conviction could have been obtained without Thibodeaux's confession, and Thibodeaux maintains that he falsely confessed for a crime that he did not commit.

All of the individual defendants are employees of the Jefferson Parish Sheriff's Office who either participated in questioning Thibodeaux when he confessed to murdering Crystal Champagne, or participated in the homicide investigation in some

---

[3] The Court has provided a more detailed factual background in its Order and Reasons addressing Defendants' motion for summary judgment. (Rec. Doc. 31, Order and Reasons entered 3/3/15, granting in part and denying in part summary judgment).

manner. Thibodeaux contends that the indictment and his conviction rested on the confession alone because there was never any evidence connecting him to Crystal Champagne's body, her clothing, or the crime scene. As to the confession itself, Thibodeaux contends that it was not only demonstrably false, but also the product of an unconstitutional custodial interrogation, at which certain of the defendants allegedly "fed" him important facts about the details of the murder. The crux of Thibodeaux's claims against the individual defendants is that but for their wrongful conduct in interrogating him, he would not have falsely confessed to Crystal Champagne's murder, and consequently, he would not have spent 16 years in prison for capital murder.[4]

On March 3, 2015, the Court issued a comprehensive Order and Reasons (Rec. Doc. 31) ruling on Defendants' motion for summary judgment. That ruling narrowed the scope of this case considerably because of all the claims asserted, the Court identified a single potentially viable federal claim: Thibodeaux's Count I Fifth/Sixth Amendment claim that Defendants violated his right to counsel by continuing to question him even after he asked to speak with an attorney, and having violated that right, eliciting the confession that ultimately led to his conviction.[5]

---

[4] The Court has already explained that there is no federal constitutional right to be free from a "wrongful conviction" just as there is no right to be free from incriminating oneself by confessing "falsely." So even if Thibodeaux's theory is that he was wrongfully convicted based on a false confession he must nonetheless tether that theory to the violation of a specific existing federal right. (Rec. Doc. 79 at 11, Order and Reasons granting motion in limine). Further, § 1983 is a vehicle for vindicating existing federal rights "elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266,273 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Section 1983 is not itself a source of substantive rights. *Id*. Therefore, the first step in a claim brought under § 1983 is to identify the specific constitutional right allegedly infringed. *Id*. (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). *Id.*

[5] Thibodeaux's Count III § 1983 conspiracy claim is still pending but like any other § 1983 claim this cause of action must be grounded on the violation of a specific federal right. Again, the only

On January 30, 2017, the Court stayed and administratively closed this case after Thibodeaux brought to the Court's attention the case of *Manuel v. City of Joliet*, a case in which the Supreme Court was expected to address issues of law that Thibodeaux anticipated would prove favorable to his Fourth Amendment Claim. (Rec. Doc. 89, Order staying and closing case). As explained below, the Court had previously granted summary judgment in favor of Defendants on the Fourth Amendment claim, after concluding that the claim was prescribed. (Rec. Doc. 31, Order and Reasons entered 3/3/15, granting in part and denying in part summary judgment).

On March 17, 2017, the Supreme Court issued its decision in *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017). Subsequently, the United States Court of Appeals for the Fifth Circuit decided *Winfrey v. Rogers*, 901 F.3d 483 (5th Cir. 2018). Then on June 20, 2019, the Supreme Court decided *McDonough v. Smith*, 139 S. Ct. 2149 (2019). Thibodeaux contends that these decisions directly impact many of the issues surrounding his § 1983 Fourth Amendment claim and provide a legal basis (as intervening decisions of law) for the Court to reconsider its prior disposition of the Fourth Amendment claim. Moreover, since this Court last ruled, Thibodeaux obtained the grand jury transcripts for his state criminal case and he posits that they provide an evidentiary basis for reconsideration.

---

viable federal right at issue in this case is the Fifth/Sixth Amendment claim so the § 1983 conspiracy claim must necessarily be premised on a conspiracy to violate that right.
    Further, the viability of any of Thibodeaux's state law causes of action has never been before the Court and the Court has already forewarned the parties that its inclination, should all federal claims be disposed of prior to trial, would be to decline to exercise supplemental jurisdiction over the state law claims. (Rec. Doc. 31, Order and Reasons at 4 n.6).

The merits of Thibodeaux's arguments are discussed below.[6]

## II. Thibodeaux's Fourth Amendment Claim and the Court's Prior Ruling

Before delving into the arguments that Thibodeaux has raised in his second motion for reconsideration—which seeks reconsideration only as to the Fourth Amendment claim—it is important to understand the substance of Thibodeaux's Fourth Amendment claim and why the Court originally concluded that it is prescribed. As the Court previously explained,

> The Fourth Amendment claim that Thibodeaux pleaded is quite simple. Thibodeaux alleges that he was taken into custody and transported to the Harvey Criminal Investigations Bureau ("CIB") without probable cause. (Rec. Doc. 1, Complaint ¶ 59). Thibodeaux also alleges that once he got to the station, he was not free to leave for the next nine hours leading up to his formal arrest, even though the officers lacked probable cause to hold him prior to his confession. (*Id.* ¶¶ 59-60). Thibodeaux's contention is that his entire time of incarceration was a "wrongful seizure" that continued from the time he entered the Harvey CIB station for questioning until he was released in 2012. (*Id.* ¶ 62).

(Rec. Doc. 31, Order and Reasons at 10).

In other words, Thibodeaux contends that the Fourth Amendment wrongful

---

[6] The Court is unmoved by the defense's suggestion that the Court should not consider Thibodeaux's arguments for reconsideration. No final judgment has been issued in this case and the Court stayed this matter in anticipation of clarification from the Supreme Court as to the Fourth Amendment claim. Whether the cited cases actually alter the legal landscape so as to afford Thibodeaux any relief from this Court's prior rulings is a different question but fairness requires that Thibodeaux be allowed to present his arguments.
 Moreover, Thibodeaux was met with resistance (not from the defendants) when he tried to obtain the grand jury transcripts, and he did not have them when he opposed Defendants' motion for summary judgment or when he filed his first motion for reconsideration. In fact, when the Court denied Thibodeaux's first motion for reconsideration on June 17, 2015, the Court specifically explained that because discovery was ongoing, if Thibodeaux could obtain relevant evidence that would call into question the Court's rulings then he could bring that to the Court's attention via an appropriate motion. (Rec. Doc. 37, Order and Reasons entered 6/17/15, denying reconsideration). Therefore, while the Court considers its prior rulings to be sound and does not take lightly the prospect of altering them, the Court will consider Thibodeaux's new legal authorities and evidence.

seizure violation that he was subjected to lasted for 16 years.

The Court has previously explained why the initial encounter with the police, when Thibodeaux accompanied officers to the Harvey station, is not a viable claim.[7] Instead, even assuming that Thibodeaux voluntarily left his mother's house to accompany the detectives to the station, the wrongful seizure that triggered a Fourth Amendment violation would have occurred at some point over the next nine hours of exhausting interrogation when the situation transitioned from one of voluntary cooperation to involuntary detention (in the absence of probable cause to believe that Thibodeaux had committed a crime) because Thibodeaux wanted to leave but was not free to do so.[8]  Several of the named defendants in this action were personally involved in that allegedly involuntary seizure. (Rec. Doc. 31 at 10 n.9). Thus, Thibodeaux's Fourth Amendment wrongful seizure claim accrued—<u>the accrual date being the point in time when Thibodeaux *first* could have taken legal action on the Fourth Amendment claim</u>—at some point during the pre-confession nine hours of questioning when he was not allowed to leave the Harvey CIB station even though the officers lacked probable cause

---

[7] As the Court has already observed, none of the defendants in this case were involved in picking Thibodeaux up at his mother's house and bringing him to the Harvey station for questioning, and aside from that, Thibodeaux admitted at his deposition that he went with the officers voluntarily because he was willing to help in the investigation into Crystal Champagne's disappearance. (Rec. Doc. 31 at 9 n.9). Thus, there was no wrongful "seizure"—the sine qua non of a Fourth Amendment violation—associated with the officers transporting Thibodeaux to the Harvey station for questioning. And even if there had been, the officers who are defendants in this case cannot be held to account for the acts or omissions of other officers whose conduct they did not control.

[8] A person is "seized" for Fourth Amendment purposes whenever officials terminate or restrain his freedom of movement by either physical force or show of authority. *Brendlin v. California*, 551 U.S. 249, 254 (2007) (citing *Florida v. Bostick*, 501 U.S. 429, 434 (1991)).

to believe that he had committed a crime. (*Id.* at 11). The accrual date for Thibodeaux's Fourth Amendment claim is therefore July 21, 1996.[9]

But the accrual date only marks the earliest point in time when Thibodeaux first could have taken legal action on the Fourth Amendment claim—in other words, the point in time when the cause of action was choate. This is true because a Fourth Amendment violation arises and therefore becomes actionable upon a wrongful "seizure," independent and without regard to whether any criminal charges, much less an actual conviction, ultimately result from the violative detention. *See Manuel*, 137 S. Ct. at 926 (Thomas, J., dissenting). So while Thibodeaux had an accrued Fourth Amendment claim as of July 21, 1996, and therefore could have taken legal action as early as this date to challenge the constitutionality of his detention, the more important legal question for Thibodeaux is when the one-year period to file suit on the Fourth Amendment claim started to run against him.[10] The controlling law—at least as of the time that the Court issued its prior rulings—dictated that the one year limitations clock began to run no later than July 25, 1996, which was the date that Thibodeaux was indicted, and therefore held from that point forward pursuant to legal process. (Rec.

---

[9] Thibodeaux entered the Harvey station on July 20, 1996, and confessed on July 21, 1996. Assuming without deciding that a Fourth Amendment violation did in fact occur, the Court will assume that it occurred after midnight on the evening when Thibodeaux first entered the station to cooperate with the investigation. As will be clear from the discussion that follows, it makes no difference under the facts of this case whether the violation actually occurred on the 20th or the 21st of July 1996.

[10] The Court has previously rejected Thibodeaux's suggestion that a two year limitation period could apply to his Fourth Amendment claim. (Rec. Doc. 37 at 3 n.1, Order and Reasons entered 6/17/15, denying reconsideration). The limitations period for the Fourth Amendment claim is one year and Thibodeaux has not moved for reconsideration of this legal determination.

Docs. 31 & 37). As the Court explained, Thibodeaux's Fourth Amendment claim prescribed on July 25, 1997 (one year from the date of indictment), pursuant to a straightforward application of the Supreme Court's on point, controlling decision in *Wallace v. Kato*, 549 U.S. 384 (2007), which, for statute of limitations purposes, analogizes a Fourth Amendment violation to the tort of false imprisonment. Per *Wallace*, the prescriptive period on a § 1983 claim seeking damages for an arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process. 549 U.S. at 396. And since Thibodeaux did not file suit until September 20, 2013, the Fourth Amendment claim was untimely.[11]

### III. Thibodeaux's Motion for Reconsideration

Thibodeaux re-urges—relying upon new post-ruling authorities and subsequently obtained grand jury evidence—the same argument that he has made since the inception of this litigation: that the one year limitations period on his Fourth Amendment claim should be analogized to the tort of malicious prosecution (as opposed to the tort of false imprisonment), which requires as an element of the cause of action that the underlying conviction be vacated or set aside. If the tort of malicious prosecution provides the proper prescriptive analogy for Thibodeaux's Fourth Amendment claim, then prescription did not commence to run on his Fourth Amendment claim until his

---

[11] The Court identified the following important dates for the prescription analysis: Thibodeaux was brought in for questioning on **July 20, 1996** and he confessed in the early morning hours of **July 21, 1996**. Thibodeaux was indicted on **July 25, 1996**, and he was convicted on **October 3, 1997**. Thibodeaux's conviction and sentence were vacated on **September 27, 2012**. Thibodeaux filed the instant § 1983 Complaint on **September 20, 2013**. (Rec. Doc. 31 at 8).

conviction was vacated and set aside on September 27, 2012. And since he filed this civil action less than one year later, the Fourth Amendment claim would not be prescribed. Of course, as the Court explained in its exhaustive legal analysis both in ruling on Defendants' motion for summary judgment and on Thibodeaux's first motion for reconsideration, this position ran contrary to controlling law per *Wallace, supra*. The Court therefore turns its attention to the new authorities that Thibodeaux relies upon to see whether the legal landscape has changed.

In *Manuel v. City of Joliet* the Court held that the plaintiff could rely on the Fourth Amendment to challenge an allegedly unlawful period of *pretrial* detention that lasted 48 days. 137 S. Ct at 914. The most significant aspect of the opinion was the Court's recognition that the Fourth Amendment may continue to govern a period of *pretrial* detention even after the initiation of legal process. *Id*. But the key fact that drove the decision was that the legal process that Manuel had received—a preliminary probable cause hearing before a judge and a grand jury indictment—were based entirely on fabricated "made-up" evidence and false testimony from the arresting officers. Thus, legal process did not expunge Manuel's Fourth Amendment claim because the "process" he received failed to establish what that Amendment makes essential for pretrial detention—probable cause to believe that he committed a crime. *Id*. at 919-20.

The *Manuel* decision taken alone is not helpful to Thibodeaux for two reasons. First, the Supreme Court specifically declined to address when the limitations period on Manuel's Fourth Amendment claim began to run, which again is the most important legal question as to Thibodeaux's claim. Second, and perhaps even more important, the *Manuel* decision only addressed pretrial detention not post-conviction incarceration. In

fact, the majority expressly rejected any suggestion that its holding pertaining to "tainted" legal process applied to post-conviction periods of detention:

> By contrast . . . once a trial has occurred, the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support both a conviction and any ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment . . . [t]he Framers "drafted the Fourth Amendment" to address the matter of *pretrial* deprivations of liberty . . ., and the Amendment thus provides "standards and procedures" for "the detention of suspects *pending trial*.

*Manuel*, 137 S. Ct. at 920 n.8 (emphasis in original and internal citations omitted).[12]

Unlike *Manuel*, Thibodeaux's Fourth Amendment claim relates to pre-verdict detention and post-verdict incarceration, with most of the sixteen years that he was deprived of liberty having followed a full criminal trial. Thus, even assuming without deciding that false evidence was presented by the defendants before Thibodeaux's grand jury so as to taint that legal process, *Manuel* only stands for the proposition that the Fourth Amendment continued to govern up until Thibodeaux was convicted on October 3, 1997. And per the quoted passage above from *Manuel*, upon conviction the Fourth Amendment no longer applied to Thibodeaux's involuntary detention even if Thibodeaux could demonstrate that the defendants provided false testimony at his criminal trial to help convict him. And because nothing in *Manuel* suggests that a Fourth Amendment violation that accrued on July 21, 1996 and ended no later than October 3, 1997 was held in abeyance for limitations purposes until the conviction was set aside,

---

[12] Perhaps the quoted passage from the footnote was intended to address criticisms that Justice Thomas raised in his dissent. Justice Thomas observed that by the majority's logic, there was no apparent reason why even a judgment of conviction should cut off the accrual of new Fourth Amendment claims based on the use of fabricated evidence. *Manuel*, 137 S. Ct. at 927 n.3 (Thomas, J., dissenting). Obviously, the majority wanted to be clear that *Manuel* was not intended to elide the distinction between pre- and post-judgment detention.

nothing in *Manuel* calls into question the Court's prior conclusion that when suit was filed on September 20, 2013, the Fourth Amendment claim was already prescribed. In short, while *Manuel* does allow that the Fourth Amendment violation that accrued on July 21, 1996 could have continued past the point of an allegedly tainted grand jury process, it does nothing to suggest that the limitations period remained tolled until Thibodeaux's conviction was vacated.

*Winfrey v. Rogers*, decided in 2018 after *Manuel,* appears at first blush to be a promising decision for Thibodeaux because in that case the Fifth Circuit analogized the plaintiff's Fourth Amendment wrongful seizure claim to the tort of malicious prosecution to hold that the claim did not accrue until the criminal proceedings terminated in his favor. 901 F. 3d at 493. This of course is the legal approach that Thibodeaux has been arguing in favor of since the inception of this lawsuit nearly seven years ago.

But what Thibodeaux fails to recognize is that the plaintiff in *Winfrey* was acquitted at his criminal trial so none of the time for which he was wrongfully "seized" involved post-verdict or post-conviction incarceration. While Winfrey's detention had lasted several years in duration, all of the time that he was locked up constituted pretrial detention governed by the Fourth Amendment as confirmed by *Manuel*. Of course once Winfrey was acquitted at trial and released, the allegedly violative period of detention ended and the limitations on his Fourth Amendment claim began to run. The Court is persuaded that together *Manuel* and *Winfrey* confirm that the limitations clock on an accrued Fourth Amendment claim begins to run *no later than* the date of the criminal trial—and this is true whether the plaintiff is acquitted or convicted at that trial. *Winfrey*

does not stand for the general proposition that a Fourth Amendment violation continues past the point of conviction into a period of post-trial incarceration so as to end tolling only when the conviction is later set aside. And it certainly does not stand for the proposition that Thibodeaux's Fourth Amendment claim should be analogized to the tort of malicious prosecution for limitations purposes.

Finally, *McDonough v. Smith* also held that the statute of limitations began to run on the plaintiff's claim when criminal proceedings terminated in his favor but that plaintiff's claim was not brought under the Fourth Amendment. 139 S. Ct. at 2153. Moreover, like the plaintiff in *Winfrey*, McDonough was acquitted at trial so none of the time at issue in that case involved post-conviction incarceration—all of the time that the plaintiff was subjected to a loss of liberty involved pretrial detention.[13] Thus, neither *Winfrey* nor *McDonough*, while both analogizing a period of pretrial detention to the tort of malicious prosecution, and therefore pegging the start of the limitations clock at the favorable termination of criminal proceedings, stand for the proposition that the Fourth Amendment continued to govern into the period of Thibodeaux's post-conviction incarceration. And neither decision suggests that the limitations period for Thibodeaux's Fourth Amendment claim was tolled until his conviction was set aside.

Defendants are correct when they argue that none of the foregoing decisions have any bearing on the timeliness of Thibodeaux's Fourth Amendment claim. Even if the Court assumes that the grand jury relied on evidence that the defendants fabricated to

---

[13] The plaintiff in *McDonough* was not incarcerated pending his trial but he was subject to limitations and restrictions on his ability to travel. Therefore, the plaintiff did plead a liberty deprivation. *McDonough*, 139 S. Ct. at 2156 n.4.

help indict Thibodeaux, that would only move the start of the one year limitations clock on the Fourth Amendment claim to the date of conviction, which was October 3, 1997. The Fourth Amendment claim would have prescribed on October 3, 1998—nearly 15 years before Thibodeaux filed suit—because there is no authority to suggest that the Fourth Amendment continued to govern during the time that Thibodeaux was incarcerated following conviction. Thibodeaux's reliance on the foregoing decisions (and the grand jury evidence) to reach a contrary outcome is simply misplaced. And even if Thibodeaux were not attempting to recover under the Fourth Amendment for the years of post-verdict incarceration, there is likewise no authority to suggest that the one year limitations clock on Thibodeaux's accrued pre-verdict Fourth Amendment claim (involuntary detention from July 21, 1996 to October 3, 1997) was tolled until his conviction was set aside. A pretrial or pre-verdict Fourth Amendment violation accrues independently of a judgment of conviction so the start of the limitations clock does not depend on whether the plaintiff is subject to an extant criminal conviction.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Second Motion for Reconsideration (Rec. Doc. 103)** filed by the plaintiff, Damon Thibodeaux, is **DENIED.**[14]

July 28, 2020

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[14] At this time the case remains stayed and closed and given the local state of affairs with the COVID-19 pandemic the Court assumes that the parties wish to keep the case in that posture for the time being. In light of COVID-19 General Order 20-9, jury trials cannot take place in the Eastern District of Louisiana at this time. The Court therefore has not scheduled a status conference at this time or reopened the case. The parties can move for relief in this vein if they

---

choose to do so.